<u>Exhibit A</u>

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHARTER COMMUNICATIONS
ENTERTAINMENT I, LLC d/b/a
CHARTER COMMUNICATIONS,

Plaintiff,

v.

FRED DJAN,

Defendant.

:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION
NO. 03-40060-NMG

FILED
IN CLERKS OFFICE

2003 SEP 17 P 2: 36

U.S. DISTRICT COURT
DISTRICT OF MASS.

<u>DEFAULT JUDGMENT</u>

Plaintiff's Motion for Default Judgment is GRANTED in full.

Accordingly, the Court orders the defendant to pay plaintiff the amount of $20,000.00, plus plaintiff's costs in the amount of $183.00, and reasonable attorneys' fees in the amount of $1,897.50. <u>See</u> 47 U.S.C. § 553(c)(2)(C).

The Court further orders that the defendant is enjoined from engaging in, aiding, abetting or otherwise promoting or supporting interception or reception of the cable television programming, service or signal of Charter, including: enjoining the defendant from connecting, attaching, splicing into, tampering with or in any way using cable wires of Charter for purposes of obtaining any of the programming services of Charter without Charter's authorization; enjoining the defendant from manufacturing, purchasing, obtaining, installing, owning or possessing any equipment, components or parts used to make any such equipment capable of unscrambling, intercepting, receiving, transmitting, retransmitting, decoding or in any way

making available all or part of the programming and services of Charter without Charter's authorization; enjoining the defendant from attaching or connecting any such equipment to any property of Charter without Charter's authorization; enjoining the defendant from any further tampering with or making any connection or any disconnection or manipulating, in any manner, for any purpose, Charter's cable systems without Charter's authorization.

The Clerk is hereby instructed to enter judgment in favor of the plaintiff on all claims and to close this case.

So ordered this 24th day of _October_, 2003, at _Worcester_, Massachusetts.

NATHANIEL M. GORTON
United States District Judge

-2-

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHARTER COMMUNICATIONS
ENTERTAINMENT I, LLC d/b/a
CHARTER COMMUNICATIONS,

          Plaintiff,

v.

   ZBIGNIEW MROCZKA,

        Defendant.

CIVIL ACTION
NO. 03-00009-NMG

DOCKETED

## DEFAULT JUDGMENT

Plaintiff's Motion for Default Judgment is GRANTED in full.

Accordingly, the Court orders the defendant to pay plaintiff the amount of $20,000.00, plus plaintiff's costs in the amount of $183.00, and reasonable attorneys' fees in the amount of $2,439.50. See 47 U.S.C. § 553(c)(2)(C).

The Court further orders that the defendant is enjoined from engaging in, aiding, abetting or otherwise promoting or supporting interception or reception of the cable television programming, service or signal of Charter, including: enjoining the defendant from connecting, attaching, splicing into, tampering with or in any way using cable wires of Charter for purposes of obtaining any of the programming services of Charter without Charter's authorization; enjoining the defendant from manufacturing, purchasing, obtaining, installing, owning or possessing any equipment, components or parts used to make any such equipment capable of unscrambling, intercepting, receiving, transmitting, retransmitting, decoding or in any way

making available all or part of the programming and services of Charter without Charter's authorization; enjoining the defendant from attaching or connecting any such equipment to any property of Charter without Charter's authorization; enjoining the defendant from any further tampering with or making any connection or any disconnection or manipulating, in any manner, for any purpose, Charter's cable systems without Charter's authorization.

The Clerk is hereby instructed to enter judgment in favor of the plaintiff on all claims and to close this case.

So ordered this 9th day of _____July_____, 2003, at _____Boston_____, Massachusetts.

_Nathaniel M. Gorton_
NATHANIEL M. GORTON
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHARTER COMMUNICATIONS
ENTERTAINMENT I, LLC d/b/a
CHARTER COMMUNICATIONS,

   Plaintiff,

v.

DAVID SRAMS,

   Defendant.

       :
       :
       :
       :
       :  CIVIL ACTION
       :  NO. 02-40108-NMG
       :
       :
       :
       :
       :

## DEFAULT JUDGMENT

  Plaintiff's Motion for Default Judgment is GRANTED in full.

  Accordingly, the Court orders the defendant to pay plaintiff the amount of $10,000.00, plus plaintiff's costs in the amount of $179.50, and reasonable attorneys' fees in the amount of $3,087.00. See 47 U.S.C. § 553(c)(2)(C).

  The Court further orders that the defendant is enjoined from engaging in, aiding, abetting or otherwise promoting or supporting interception or reception of the cable television programming, service or signal of Charter, including: enjoining the defendant from connecting, attaching, splicing into, tampering with or in any way using cable wires of Charter for purposes of obtaining any of the programming services of Charter without Charter's authorization; enjoining the defendant from manufacturing, purchasing, obtaining, installing, owning or possessing any equipment, components or parts used to make any such equipment capable of unscrambling, intercepting, receiving, transmitting, retransmitting, decoding or in any way

11

making available all or part of the programming and services of Charter without Charter's authorization; enjoining the defendant from attaching or connecting any such equipment to any property of Charter without Charter's authorization; enjoining the defendant from any further tampering with or making any connection or any disconnection or manipulating, in any manner, for any purpose, Charter's cable systems without Charter's authorization.

The Clerk is hereby instructed to enter judgment in favor of the plaintiff on all claims and to close this case.

So ordered this 28th day of _____May_____, 2003, at _____Worcester_____, Massachusetts.

*Nathaniel M. Gorton*

NATHANIEL M. GORTON
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHARTER COMMUNICATIONS
ENTERTAINMENT I, LLC d/b/a
CHARTER COMMUNICATIONS,

   Plaintiff,

  v.

TINA RUMRILL,

   Defendant.

:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION
NO. 02-40220-NMG

**DOCKETED**

## DEFAULT JUDGMENT

Plaintiff's Motion for Default Judgment is GRANTED in full.

Accordingly, the Court orders the defendant to pay plaintiff the amount of $20,000.00, plus plaintiff's costs in the amount of $173.50, and reasonable attorneys' fees in the amount of $2,111.50. See 47 U.S.C. § 553(c)(2)(C).

The Court further orders that the defendant is enjoined from engaging in, aiding, abetting or otherwise promoting or supporting interception or reception of the cable television programming, service or signal of Charter, including: enjoining the defendant from connecting, attaching, splicing into, tampering with or in any way using cable wires of Charter for purposes of obtaining any of the programming services of Charter without Charter's authorization; enjoining the defendant from manufacturing, purchasing, obtaining, installing, owning or possessing any equipment, components or parts used to make any such equipment capable of unscrambling, intercepting, receiving, transmitting, retransmitting, decoding or in any way

**RECEIVED**

MAY 8 2003

MURTHA CULLINA LLP

making available all or part of the programming and services of Charter without Charter's authorization; enjoining the defendant from attaching or connecting any such equipment to any property of Charter without Charter's authorization; enjoining the defendant from any further tampering with or making any connection or any disconnection or manipulating, in any manner, for any purpose, Charter's cable systems without Charter's authorization.

The Clerk is hereby instructed to enter judgment in favor of the plaintiff on all claims and to close this case.

So ordered this _16th_ day of ___April___, 2003, at ___Worcester___,
Massachusetts.

_____
NATHANIEL M. GORTON
United States District Judge

RECEIVED

MAY 2 2003

MURTHA CULLINA LLP

-2-

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHARTER COMMUNICATIONS
ENTERTAINMENT I, LLC d/b/a
CHARTER COMMUNICATIONS,

        Plaintiff,

  v.

YVETTE MALDONADO,

        Defendant.

:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION
NO. 02-40221-NMG

**DOCKETED**

## PROPOSED DEFAULT JUDGMENT

Plaintiff's Motion for Default Judgment is GRANTED in full.

Accordingly, the Court orders the defendant to pay plaintiff the amount of $20,000.00, plus plaintiff's costs in the amount of $171.00, and reasonable attorneys' fees in the amount of $2,220.50.  See 47 U.S.C. § 553(c)(2)(C).

The Court further orders that the defendant is enjoined from engaging in, aiding, abetting or otherwise promoting or supporting interception or reception of the cable television programming, service or signal of Charter, including:  enjoining the defendant from connecting, attaching, splicing into, tampering with or in any way using cable wires of Charter for purposes of obtaining any of the programming services of Charter without Charter's authorization; enjoining the defendant from manufacturing, purchasing, obtaining, installing, owning or possessing any equipment, components or parts used to make any such equipment capable of unscrambling, intercepting, receiving, transmitting, retransmitting, decoding or in any way

making available all or part of the programming and services of Charter without Charter's authorization; enjoining the defendant from attaching or connecting any such equipment to any property of Charter without Charter's authorization; enjoining the defendant from any further tampering with or making any connection or any disconnection or manipulating, in any manner, for any purpose, Charter's cable systems without Charter's authorization.

The Clerk is hereby instructed to enter judgment in favor of the plaintiff on all claims and to close this case.

So ordered this *16th* day of *April*, 2003, at *Worcester*, Massachusetts.

NATHANIEL M. GORTON
United States District Judge

-2-

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHARTER COMMUNICATIONS    :
ENTERTAINMENT I, LLC d/b/a    :
CHARTER COMMUNICATIONS,   :
                :
    Plaintiff,        :
                :  CIVIL ACTION
v.              :  NO. 02-40132-NMG
                :
DEANDRE RUBERT a/k/a     :
DEANDRE RUBET,       :
                :
    Defendant.       :

## DEFAULT JUDGMENT

Plaintiff's Motion for Default Judgment is GRANTED in full.

Accordingly, the Court orders the defendant to pay plaintiff the amount of $20,000.00, plus plaintiff's costs in the amount of $175.60, and reasonable attorneys' fees in the amount of $1,746.00. See 47 U.S.C. § 553(c)(2)(C).

The Court further orders that the defendant is enjoined from engaging in, aiding, abetting or otherwise promoting or supporting interception or reception of the cable television programming, service or signal of Charter, including: enjoining the defendant from connecting, attaching, splicing into, tampering with or in any way using cable wires of Charter for purposes of obtaining any of the programming services of Charter without Charter's authorization; enjoining the defendant from manufacturing, purchasing, obtaining, installing, owning or possessing any equipment, components or parts used to make any such equipment capable of unscrambling, intercepting, receiving, transmitting, retransmitting, decoding or in any way making available all or part of the programming and services of Charter without Charter's

authorization; enjoining the defendant from attaching or connecting any such equipment to any property of Charter without Charter's authorization; enjoining the defendant from any further tampering with or making any connection or any disconnection or manipulating, in any manner, for any purpose, Charter's cable systems without Charter's authorization.

The Clerk is hereby instructed to enter judgment in favor of the plaintiff on all claims and to close this case.

So ordered this 27th day of _January_, 2003, at _Worcester_, Massachusetts.

_Nathaniel M. Gorton_
NATHANIEL M. GORTON
United States District Judge

**RECEIVED**

OCT 0 1 2002

**MURTHA CULLINA LLP**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHARTER COMMUNICATIONS
ENTERTAINMENT I, LLC d/b/a
CHARTER COMMUNICATIONS,           :

       Plaintiff,                 :

v.                                :     CIVIL ACTION
                                  :     NO. 01-40222-NMG
TODD S. DEFILIPPO,                :

       Defendant.                 :

DOCKETED

## DEFAULT JUDGMENT

Plaintiff's Motion for Default Judgment is GRANTED in full.

Accordingly, the Court orders the defendant to pay plaintiff the amount of $20,000.00, plus plaintiff's costs in the amount of $181.85, and reasonable attorneys' fees in the amount of $3,131.50. See 47 U.S.C. § 553(c)(2)(C) and 47 U.S.C. § 605 (e)(3)(B)(iii).

The Court further orders that the defendant is enjoined from engaging in, aiding, abetting or otherwise promoting or supporting interception or reception of the cable television programming, service or signal of Charter, including: enjoining the defendant from connecting, attaching, splicing into, tampering with or in any way using cable wires of Charter for purposes of obtaining any of the programming services of Charter without

Charter's authorization; enjoining the defendant from manufacturing, purchasing, obtaining, installing, owning or possessing any equipment, components or parts used to make any such equipment capable of unscrambling, intercepting, receiving, transmitting, retransmitting, decoding or in any way making available all or part of the programming and services of Charter without Charter's authorization; enjoining the defendant from attaching or connecting any such equipment to any property of Charter without Charter's authorization; enjoining the defendant from any further tampering with or making any connection or any disconnection or manipulating, in any manner, for any purpose, Charter's cable systems without Charter's authorization.

The Clerk is hereby instructed to enter judgment in favor of the plaintiff on all claims and to close this case.

So ordered this 26th day of ___Sept.___, 2002, at ___Worcester___, Massachusetts.

_Nathaniel M. Gorton_
NATHANIEL M. GORTON
United States District Judge

-2-

FILED
IN CLERKS OFFICE

㎜ JUL -3 A 10: 17

UNITED STATES DISTRICT COURT U.S. DISTRICT COURT
DISTRICT OF MASSACHUSETTS DISTRICT OF MASS.

CHARTER COMMUNICATIONS
ENTERTAINMENT I, LLC d/b/a
CHARTER COMMUNICATIONS,

        Plaintiff,

v.

KATHLEEN KESSLER,

        Defendant.

CIVIL ACTION
NO. 02-40054-NMG

DOCKETED

## DEFAULT JUDGMENT

Plaintiff's Motion for Default Judgment is GRANTED in full.

Accordingly, the Court orders the defendant to pay plaintiff the amount of $20,000.00, plus plaintiff's costs in the amount of $174.35, and reasonable attorneys' fees in the amount of $2,580.00. See 47 U.S.C. § 553(c)(2)(C) and 47 U.S.C. § 605 (e)(3)(B)(iii).

The Court further orders that the defendant is enjoined from engaging in, aiding, abetting or otherwise promoting or supporting interception or reception of the cable television programming, service or signal of Charter, including: enjoining the defendant from connecting, attaching, splicing into, tampering with or in any way using cable wires of Charter for purposes of obtaining any of the programming services of Charter without

Charter's authorization; enjoining the defendant from manufacturing, purchasing, obtaining, installing, owning or possessing any equipment, components or parts used to make any such equipment capable of unscrambling, intercepting, receiving, transmitting, retransmitting, decoding or in any way making available all or part of the programming and services of Charter without Charter's authorization; enjoining the defendant from attaching or connecting any such equipment to any property of Charter without Charter's authorization; enjoining the defendant from any further tampering with or making any connection or any disconnection or manipulating, in any manner, for any purpose, Charter's cable systems without Charter's authorization.

   The Clerk is hereby instructed to enter judgment in favor of the plaintiff on all claims and to close this case.


   So ordered this 13th day of _August_, 2002, at _Boston_, Massachusetts.

                              _Nathaniel M. Gorton_
                              NATHANIEL M. GORTON
                              United States District Judge

-2-

**RECEIVED**

MAY 1 5 2002

**MURTHA CULLINA LLP**

FILED
IN CLERKS OFFICE

2003 APR 19  A 11: 02

DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHARTER COMMUNICATIONS              :   CIVIL ACTION
ENTERTAINMENT I, LLC d/b/a          :   NO. 02-40026-NMG
CHARTER COMMUNICATIONS,             :

       Plaintiff,                   :
                                    :
v.                                  :
                                    :
BETHANY WAYNE,                      :
                                    :
       Defendant.                   :
                                    :
                                    :

**DOCKETED**

## DEFAULT JUDGMENT

Plaintiff's Motion for Default Judgment is GRANTED in full.

Accordingly, the Court orders the defendant to pay plaintiff the amount of $20,000.00, plus plaintiff's costs in the amount of $195.00, and reasonable attorneys' fees in the amount of $1987.50. See 47 U.S.C. § 553(c)(2)(C).

The Court further orders that the defendant is enjoined from engaging in, aiding, abetting or otherwise promoting or supporting interception or reception of the cable television programming, service or signal of Charter, including:  enjoining the defendant from connecting, attaching, splicing into, tampering with or in any way using cable wires of Charter for purposes of obtaining any of the programming services of Charter without Charter's authorization; enjoining the defendant from manufacturing, purchasing, obtaining,

installing, owning or possessing any equipment, components or parts used to make any such equipment capable of unscrambling, intercepting, receiving, transmitting, retransmitting, decoding or in any way making available all or part of the programming and services of Charter without Charter's authorization; enjoining the defendant from attaching or connecting any such equipment to any property of Charter without Charter's authorization; enjoining the defendant from any further tampering with or making any connection or any disconnection or manipulating, in any manner, for any purpose, Charter's cable systems without Charter's authorization.

The Clerk is hereby instructed to enter judgment in favor of the plaintiff on all claims and to close this case.

So ordered this _6th_ day of _May_____, 2002, at _Worcester_____, Massachusetts.

_Nathaniel M. Gorton_____
NATHANIEL M. GORTON
United States District Judge

FILED
IN CLERKS OFFICE

2002 FEB 27  A 10: 27

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
DISTRICT OF MASS.

|  |  |  |
|---|---|---|
| CHARTER COMMUNICATIONS ENTERTAINMENT I, LLC d/b/a CHARTER COMMUNICATIONS, | : | CIVIL ACTION NO. 01-40120-NMG |
| Plaintiff, | : | |
| v. | : | |
| THOMAS TETRAULT, | : | |
| Defendant. | : | |

## DEFAULT JUDGMENT

Plaintiff's Motion for Default Judgment is GRANTED in full.

Accordingly, the Court orders the defendant to pay plaintiff the amount of $40,000.00, plus plaintiff's costs in the amount of $184.55, and reasonable attorneys' fees in the amount of $2610.00  See 47 U.S.C. § 553(c)(2)(C) and 47 U.S.C. § 605(e)(3)(B)(iii).

The Court further orders that the defendant is enjoined from engaging in, aiding, abetting or otherwise promoting or supporting interception or reception of the cable television programming, service or signal of Charter, including: enjoining the defendant from connecting, attaching, splicing into, tampering with or in any way using cable wires of Charter for purposes of obtaining any of the programming services of Charter without Charter's authorization; enjoining the defendant from manufacturing, purchasing, obtaining,

installing, owning or possessing any equipment, components or parts used to make any such equipment capable of unscrambling, intercepting, receiving, transmitting, retransmitting, decoding or in any way making available all or part of the programming and services of Charter without Charter's authorization; enjoining the defendant from attaching or connecting any such equipment to any property of Charter without Charter's authorization; enjoining the defendant from any further tampering with or making any connection or any disconnection or manipulating, in any manner, for any purpose, Charter's cable systems without Charter's authorization.

The Clerk is hereby instructed to enter judgment in favor of the plaintiff on all claims and to close this case.

So ordered this 5ᵈ day of _____April_____, 2002, at ____Worcester____, Massachusetts.

NATHANIEL M. GORTON
United States District Judge

# RECEIVED

MAR 1 1 2002

## MURTHA CULLINA LLP

### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CHARTER COMMUNICATIONS ENTERTAINMENT I, LLC d/b/a CHARTER COMMUNICATIONS, | : : : | CIVIL ACTION NO. 01-40171-NMG |
| Plaintiff, | : : | |
| v. | : : | |
| MIGDALIA ESTRADA, | : : | |
| Defendant. | : : : | |

DOCKETED

### ~~PROPOSED~~ DEFAULT JUDGMENT

Plaintiff's Motion for Default Judgment is GRANTED in full.

Accordingly, the Court orders the defendant to pay plaintiff the amount of $10,000.00, plus plaintiff's costs in the amount of $200.00, and reasonable attorneys' fees in the amount of $2,661.00 See 47 U.S.C. § 553(c)(2)(C).

The Court further orders that the defendant is enjoined from engaging in, aiding, abetting or otherwise promoting or supporting interception or reception of the cable television programming, service or signal of Charter, including: enjoining the defendant from connecting, attaching, splicing into, tampering with or in any way using cable wires of Charter for purposes of obtaining any of the programming services of Charter without Charter's authorization; enjoining the defendant from manufacturing, purchasing, obtaining,



installing, owning or possessing any equipment, components or parts used to make any such equipment capable of unscrambling, intercepting, receiving, transmitting, retransmitting, decoding or in any way making available all or part of the programming and services of Charter without Charter's authorization; enjoining the defendant from attaching or connecting any such equipment to any property of Charter without Charter's authorization; enjoining the defendant from any further tampering with or making any connection or any disconnection or manipulating, in any manner, for any purpose, Charter's cable systems without Charter's authorization.

The Clerk is hereby instructed to enter judgment in favor of the plaintiff on all claims and to close this case.

So ordered this 6th day of March, 2002, at Worcester, Massachusetts.

NATHANIEL M. GORTON
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2001 DEC 19 A 11: 20

CHARTER COMMUNICATIONS
ENTERTAINMENT I, LLC d/b/a
CHARTER COMMUNICATIONS,

        Plaintiff,

v.

STEPHEN DUGGAN,

        Defendant.

:  CIVIL ACTION
:  NO. 01-40093-NMG
:
:
:
:
:
:
:
:
:
:



## PROPOSED DEFAULT JUDGMENT

Plaintiff's Motion for Default Judgment is GRANTED in full.

Accordingly, the Court orders the defendant to pay plaintiff the amount of $10,000.00, plus plaintiff's costs in the amount of $168.75, and reasonable attorney's fees in the amount of $2,608.50  See 47 U.S.C. § 553(c)(2)(C).

The Court further orders that the defendant is enjoined from engaging in, aiding, abetting or otherwise promoting or supporting interception or reception of the cable television programming, service or signal of Charter, including:  enjoining the defendant from connecting, attaching, splicing into, tampering with or in any way using cable wires of Charter for purposes of obtaining any of the programming services of Charter without Charter's authorization; enjoining the defendant from manufacturing, purchasing, obtaining,

installing, owning or possessing any equipment, components or parts used to make any such equipment capable of unscrambling, intercepting, receiving, transmitting, retransmitting, decoding or in any way making available all or part of the programming and services of Charter without Charter's authorization; enjoining the defendant from attaching or connecting any such equipment to any property of Charter without Charter's authorization; enjoining the defendant from any further tampering with or making any connection or any disconnection or manipulating, in any manner, for any purpose, Charter's cable systems without Charter's authorization.

The Clerk is hereby instructed to enter judgment in favor of the plaintiff on all claims and to close this case.

So ordered this 24th day of January , 2002, at Worcester , Massachusetts.

*Nathaniel M. Gorton*

NATHANIEL M. GORTON
United States District Judge

2001 NOV 28 P 1: 04

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CHARTER COMMUNICATIONS ENTERTAINMENT I, LLC d/b/a CHARTER COMMUNICATIONS, | : : : | CIVIL ACTION NO. 01-40149-NMG |
| Plaintiff, | : : | |
| v. | : | |
| SCOTT FAIRBANKS, | : : | |
| Defendant. | : : | |

DOCKETED

DOCKETED

## DEFAULT JUDGMENT

Plaintiff's Motion for Default Judgment is GRANTED in full.

Accordingly, the Court orders the defendant to pay plaintiff the amount of $40,000.00, plus plaintiff's costs in the amount of $176.55, and reasonable attorney's fees in the amount of $7,230.50. See 47 U.S.C. § 553(c)(2)(C).

The Court further orders that the defendant is enjoined from engaging in, aiding, abetting or otherwise promoting or supporting interception or reception of the cable television programming, service or signal of Charter, including: enjoining the defendant from connecting, attaching, splicing into, tampering with or in any way using cable wires of Charter for purposes of obtaining any of the programming services of Charter without Charter's authorization; enjoining the defendant from manufacturing, purchasing, obtaining,

installing, owning or possessing any equipment, components or parts used to make any such

equipment capable of unscrambling, intercepting, receiving, transmitting, retransmitting,

decoding or in any way making available all or part of the programming and services of

Charter without Charter's authorization; enjoining the defendant from attaching or

connecting any such equipment to any property of Charter without Charter's authorization;

enjoining the defendant from any further tampering with or making any connection or any

disconnection or manipulating, in any manner, for any purpose, Charter's cable systems

without Charter's authorization.

The Clerk is hereby instructed to enter judgment in favor of the plaintiff on all

claims and to close this case.

So ordered this 5th day of _December_, 2001, at _Worcester_,

Massachusetts.

_S/Nathaniel M. Gorton_

NATHANIEL M. GORTON
United States District Judge

2001 NOV 28 P 1:04

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHARTER COMMUNICATIONS                :    CIVIL ACTION
ENTERTAINMENT I, LLC d/b/a            :    NO. 01-40148-NMG
CHARTER COMMUNICATIONS,               :
                                      :
            Plaintiff,                :
                                      :
v.                                    :
                                      :
THOMAS PANTOJA                        :
a/k/a TOMMY PANTOJA,                  :
                                      :
            Defendant.                :
                                      :

DESCRIPTION DEFAULT JUDGMENT

Plaintiff's Motion for Default Judgment is GRANTED in full.

Accordingly, the Court orders the defendant to pay plaintiff the amount of
$10,000.00, plus plaintiff's costs in the amount of $175.55, and reasonable attorney's fees
in the amount of $1,802.00. See 47 U.S.C. § 553(c)(2)(C).

The Court further orders that the defendant is enjoined from engaging in, aiding,
abetting or otherwise promoting or supporting interception or reception of the cable
television programming, service or signal of Charter, including: enjoining the defendant
from connecting, attaching, splicing into, tampering with or in any way using cable wires of
Charter for purposes of obtaining any of the programming services of Charter without
Charter's authorization; enjoining the defendant from manufacturing, purchasing, obtaining,



installing, owning or possessing any equipment, components or parts used to make any such equipment capable of unscrambling, intercepting, receiving, transmitting, retransmitting, decoding or in any way making available all or part of the programming and services of Charter without Charter's authorization; enjoining the defendant from attaching or connecting any such equipment to any property of Charter without Charter's authorization; enjoining the defendant from any further tampering with or making any connection or any disconnection or manipulating, in any manner, for any purpose, Charter's cable systems without Charter's authorization.

The Clerk is hereby instructed to enter judgment in favor of the plaintiff on all claims and to close this case.

So ordered this 5th day of December, 2001, at Worcester, Massachusetts.

NATHANIEL M. GORTON
United States District Judge

-2-

**FEDERAL COMMUNICATIONS COMMISSION**
WASHINGTON, D.C. 20554

8 ... 1994

IN REPLY REFER TO:
31030/EQU/1-2-21
1300B4

Mr. John M. Boehm
811 South 13th Street
Lincoln, NE 68508

Dear Mr. Boehm:

This is in reply to your letter of November 10, 1994, to John Reed regarding our regulations on cable system terminal devices.

As defined in Section 15.3(y), a TV interface device (TVID) is a product that produces, or translates in frequency, a radio frequency carrier modulated by a video signal derived from an external or internal source, and which feeds the modulated radio frequency energy by conduction to the antenna terminals or other non-baseband input connections of a TV broadcast receiver. Under the definition in Section 15.3(e), a cable system terminal device (CSTD) is a TVID that serves, as its primary function, to connect a cable system operated under Part 76 of our rules to a TV broadcast receiver or other subscriber premise equipment.

As indicated in Section 15.101(a) of our rules, a TVID must be authorized under our certification procedure; a CSTD must be authorized under our notification procedure. According to Sections 2.803 and 2.1204 of our rules and 47 U.S.C. 302(b), obtaining the grant of equipment authorization is a prerequisite to legal marketing and importation. Per Section 2.915(a)(2), the grant of equipment authorization must serve the public interest, convenience and necessity. Further, as shown in Section 2.939, a grant of equipment authorization may be revoked by the Commission, among other reasons, because of conditions that come to our attention that would warrant our refusing to grant the authorization in the first place or because of changes that have been made to the equipment other than those authorized under our rules or by us.

This Commission will not knowingly authorize any CSTD that contains, or has provisions to contain, circuitry to decode scrambled transmissions over cable systems unless the decoding circuitry can only be activated by the cable system, i.e., an addressable system is employed. The authorization of a CSTD with a non-addressable decoding system would permit the user to receive encoded cable channels without authorization by the cable operator, in violation of 47 U.S.C. 553. 47 U.S.C. 553(a)(1) states that no person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as otherwise specifically authorized by law. Further, 47 U.S.C. 553(a)(2) states that the term "assist in intercepting or

2.

receiving" includes the manufacture or distribution of equipment intended by the manufacturer or distributor for unauthorized reception of any communications service offered over a cable system.

Based on the above, the authorization of CSTDs that contain non-addressable decoding circuitry which permits the interception and reception of scrambled programming without authorization by the cable operator would not be in the public interest, as required under 47 CFR Section 2.915(a)(2), since these products could violate 47 U.S.C. 553. Accordingly, the Commission would either deny the application for equipment authorization, as provided in Section 2.919, or, as provided in Section 2.939, revoke an existing grant of equipment authorization upon a finding that addressability is not, or no longer is, required for the system to operate with encoded cable channels. Indeed, if this addressability feature is removed subsequent to receiving a grant of authorization, the Commission no longer classifies the product as the same device that was originally authorized (note 47 CFR Sections 2.904(b), 2.973, and 2.977(a)). This product now may no longer be legally imported, marketed or used (47 U.S.C. 302(b) and 553; 47 CFR Sections 2.803, 2.1204 and 15.1). Penalties for violation of 47 U.S.C. 553 are contained in paragraph (b) of that section; penalties for violations of our rules or of 47 U.S.C. 302(b) are contained in 47 U.S.C. 501-510.

The above background information addresses the major points raised in your letter. Taking the rest of your questions in the order presented:

1) John Reed is the senior staff engineer with the Technical Standards Branch, operating under the Commission's Office of Engineering and Technology. This branch is responsible for the various technical standards placed on radio frequency devices.

2) A public notice may, or may not, have any legal effect, depending on whether or not it was specifically adopted by the Commission, reflects changes to the existing rules in compliance with 5 U.S.C. 553, and is properly published in the Federal Register. Normally, a public notice is not used to implement regulations; rather it is used to alert or remind the public of the effect of laws or regulations that are already in place. The public notice on cable converters was issued for the latter reason.

3) The above introduction provides the information requested in this portion of your letter.

3.

I trust that the above responds to your inquiry. Additional questions should be directed to John Reed, 1300B4, at the address on the letterhead or at (202) 653-7313.

Sincerely,

Richard M. Smith
Chief
Office of Engineering and Technology

cc:    Richard Smith
       Julius Knapp
       Robert Bromery
       Richard Engelman
       Art Wall
       Steve Kaminer (with copy of incoming)
       Larry Clance (with copy of incoming)
       Dan Emrick (with copy of incoming)
JAReed/kls/12-07-94

Chief, TSB                                    Chief, AED

## DECLARATION OF JOHN A. REED

I, John A. Reed, declare as follows:

1. I am an Electronics Engineer with the Federal Communications Commission (FCC), 1919 M Street, N.W., Washington, D.C. I have been employed by the FCC for 20 years and currently hold the position of Staff Engineer, Technical Standards Branch, Authorization and Evaluation Division, Office of Engineering and Technology. I have held my current position since January 1975. My duties include the drafting and interpretation of technical equipment standards and authorization requirements for radio frequency devices, including Commission requirements regarding the marketing and importation of such devices.

2. I am a 1973 graduate of the University of Virginia and hold Bachelor of Science degrees in Electrical Engineering and in Applied Mathematics.

3. The Federal Communications Commission is an independent federal regulatory agency created by Congress to regulate private sector and state and local government telecommunications in the United States pursuant to the Communications Act of 1934, as amended, Title 47 of the United States Code (U.S.C.), Section 151 *et seq.*, and the Commission's Rules and Regulations promulgated thereunder, Title 47 of the Code of Federal Regulations (C.F.R.), Parts 0 through 100.

4. This declaration is based upon my Commission experience and knowledge of the FCC's Rules regarding the regulation, authorization, marketing and importation of radio frequency (RF) devices, including cable television system converter-decoders. While I am not directly involved in the granting of equipment authorizations, I

am responsible for interpreting regulations that determine whether a certain type of product, or modification to a product, should be authorized by the Commission as being in the public interest.

## Federal Regulation of Cable Television System Converter-Decoders

5. 47 U.S.C. § 302a(a) empowers the Federal Communications Commission to make regulations governing the interference potential of devices which in their operation are capable of emitting RF energy in sufficient degree to cause harmful interference to radio communications.

6. 47 U.S.C. § 302a(b) makes it unlawful for any person to manufacture, import, sell, offer for sale, or ship devices or home electronic equipment and systems, or use devices, which fail to comply with the regulations.

7. Pursuant to Section 302a the Commission has promulgated Rules and Regulations contained in Parts 2 and 15 of Title 47 of the C.F.R. that establish a regulatory scheme for the Commission to authorize various RF emitting devices to be manufactured, imported, sold or offered for sale, shipped or used. The FCC's Rules, depending on the specific type of RF emiting equipment involved, require different levels or types of equipment authorization.

8. Cable television system converter-decoders are broadly categorized by the Commission's Rules as unintentional radiators of RF energy. An unintentional radiator is defined by 47 C.F.R. 15.3(z) as a device that intentionally generates radio frequency energy for use within the device, or that sends radio frequency signals by conduction to associated equipment via connecting wiring, but which is not intended to

emit radio frequency energy by radiation or induction.

9. Cable system converter–decoders are considered to be a type of TV interface device (TVID). A TVID is defined by 47 C.F.R. 15.3(y) as follows:

An unintentional radiator that produces or translates in frequency a radio frequency carrier modulated by a video signal derived from an external or internal signal source, and which feeds the modulated radio frequency energy by conduction to the antenna terminals or other non–baseband input connections of a TV broadcast receiver. A TV interface device may include a stand–alone RF modulator, or a composite device consisting of an RF modulator, video source and other components devices. Examples of TV interface devices are video cassette recorders and terminal devices attached to a cable system or used with a Master Antenna (including those used for central distribution video devices in apartment or office buildings.)

10. Cable television system converter–decoders, specifically, are more narrowly classified under Commission Rules as cable system terminal devices (CSTDs). A CSTD is defined by 47 C.F.R. 15.3(e) as follows:

A TVID that serves, as its primary function, to connect a cable system operated under Part 76 of this Chapter to a TV broadcast receiver or other subscriber premise equipment.  Any device which functions as a CSTD in one of its operating modes must comply with the technical requirements for such devices when operating in that mode.

11. Pursuant to 47 C.F.R. 15.101(a), all unintentional radiators require some

type of FCC equipment authorization for legal importation into and marketing within the United States. *See* 47 C.F.R. 2.1203 and 2.803 and 47 U.S.C.302a(b). Pursuant to that same section, all CSTDs require the level or type of Commission equipment authorization known as "notification." Commission procedures for applying for and obtaining "notification" authorization for CSTDs are set forth in 47 C.F.R. 2.971 through 2.979. To comply with "notification" requirements, an applicant must have its device tested to determine if it meets Commission standards with regard to radiated and conducted emissions. The only FCC approved method of testing such equipment is through measurements conducted at a calibrated test site that has been validated by the FCC. *See* 47 C.F.R. 2.948. An application must be submitted to the Commission and an authorization grant obtained from the Commission, but the applicant need not submit the measurement data to the Commission unless it is specifically requested. *See* 47 C.F.R. 2.975(a), (c) and (g).

12. The Commission permits equipment covered under a grant of "notification" to be modified prior to marketing. However, the modified equipment must continue to comply with all applicable technical standards and public interest considerations. *See* 47 C.F.R. 2.977(b) and 2.939(a)(4).

13. All equipment authorization grants, including "notification", are made and premised on the basis that such grants serve the public interest, convenience and necessity pursuant to 47 C.F.R. 2.915(a)(2). If a device was modified in such a manner that its operation would result in a violation of federal law, such a modification would be impermissible, even if it continued to comply with the applicable technical standards.

CSTDs, which are provided for in 47 C.F.R 15.3(e), must serve, as their primary function, to connect subscriber equipment, including TV receivers, to a cable system operating under Part 76 of the Commission's Rules. Pursuant to the public interest standard contained in 47 C.F.R. 2.915 and in consideration of 47 U.S.C. § 553 regarding the unauthorized reception of cable service, the Commission requires CSTD descramblers, which include some products known as "open decoders", to be addressable by cable system operators to activate and deactivate decoding capabilities on specific channels. Modifications to cable system converter–decoders to allow them to receive encoded or scrambled basic or premium cable programming transmissions without authority from and payment to a cable system operator constitute a significant alteration of the basis on, and purpose for, which the equipment authorization was originally issued. The purposes and capabilities of the modified devices would no longer serve, or be in, the public interest since the modifications would allow and could promote violations of 47 U.S.C. 533, 47 U.S.C. 605, and various state laws prohibiting the interception or reception of cable system programming without permission from, or compensation to, cable system operators. Therefore, such modifications allow and promote violations of law not contemplated or possible when the devices were authorized in their original configurations. Accordingly, any modification to permit cable converter–decoders to receive encoded or scrambled premium or basic channels without authority from the cable system operator is outside the scope of what is considered a permissible modification and, thus, voids the authority originally granted by the Commission. Indeed, the Commission has never knowingly authorized a product, new or modified, that is capable

of receiving encoded or scrambled premium or basic channels without authority from the cable system operator. I am not aware of any lawful use or purpose for any converter-decoder that is not addressable or programmable, including those that have been modified or designed to descramble all premium cable channels.

14. All cable system converter–decoders require Commission authorization for lawful importation into, or for marketing within, the United States. *See* 47 C.F.R. 2.1203 and 2.803 and 47 U.S.C. § 302a(b). Commission authorizations of CSTDS are invalidated when the devices are modified to permit the reception of encoded or scrambled programming without authority from the cable operator. Accordingly, it is a violation of 47 U.S.C.302a(b) and 47 C.F.R. 2.803 and 2.1203 to market or import cable television system converter–decoders that have been modified to allow the reception of cable television programming without authorization from cable system operators.

15. The aforementioned regulations promulgated by the Commission have been in effect since July 1, 1990, for CSTDs. For other types of TVIDs, they have been in effect since January 19, 1973. The regulations apply to any converter–decoder device intended for installation in a Part 76 cable system and to all other types of TVIDs manufactured or imported on or after those dates. In many cases, converter–decoder devices that permit reception of encoded or scrambled cable television programming services without authorization from the cable operator providing the signal are modified versions of CSTDs previously used by cable operators. In such cases, the modifications are sufficient to negate any existing authorizations previously obtained for the CSTDs. If the CSTDs were manufactured prior to July 1, 1990, under the standards in Part 76 of

the Commission's Rules, the modifications would constitute a remanufacture of the product, requiring it to comply with the current standards and equipment authorization requirements.

16. "Nonaddressable" cable television converter–decoder devices are those whose descrambling capacities are not capable of being activated or deactivated by the central computer of the cable operator providing the scrambled programming signal. The importation, marketing or distribution of such nonaddressable cable television converter-decoders is not authorized by the Commission and is a violation of 47 CFR 2.803, 47 CFR 2.1203 and 47 U.S.C. § 302a(b).

17. As of the date of this declaration, the Commission has not, pursuant to 47 C.F.R. 15.101(a), received an equipment authorization application from or provided a grant of equipment authorization to any of the following entities: Novaplex, Inc. d/b/a Gage Systems Group; Plex Communications Group, Inc. d/b/a Cableplex; Saber Technologies, Inc. d/b/a Prime Time Cable; or Torc Industries, Corp. d/b/a Cable Ready Co.

I declare under penalty of perjury that the foregoing is true and correct. Executed on the 2nd day of November 1993, at Washington, D.C.

John A. Reed